# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, For the Use of RAMONA EQUIPMENT RENTALS, INC., <br><br>                    Plaintiff, <br><br> vs. <br><br> CAROLINA CASUALTY INSURANCE COMPANY, et al., <br><br>                    Defendants. | CASE NO. 08-CV-1685 W AJB <br><br> **ORDER GRANTING IN-PART AND DENYING IN-PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 31)** |

Pending before the Court is Defendants Carolina Casualty Insurance Company ("CCIC") and Candelaria Corporation's ("Candelaria") (collectively "Defendants") partial summary-judgment motion. Plaintiff Ramona Equipment Rentals, Inc. ("Ramona") opposes the motion.

The Court decides the matter on the papers submitted and without oral argument. See S.D. Cal Civ. R. 7.1(d.1). For the reasons stated below, the Court **GRANTS IN-PART** and **DENIES IN-PART** Defendants' motion (Doc. 31).

## I. BACKGROUND

Ramona's claims arise from work on a federal construction project known as ICE El Centro SPC-Perimeter Fence Replacement / Internal Devising Fence Replacement (the "Project"). (*Defs.' Sep. State.* [Doc. 31-2], at No. 6.) The Project was to replace and construct additional fencing at the U.S. Immigration and Customs Enforcement detention facility in El Centro, California. (*Id.* at No. 8.) Defendant Calendaria was the general contractor on the Project, and agreed to furnish all necessary labor, equipment, material, and supervision. (*Oppo.* [Doc. 45], at 2.) Defendant Otay was a subcontractor supplying labor and equipment. (*Defs.' Sep. State.* at No. 9.) Defendant CCIC provided a payment bond, naming Candelaria as the bond principal and the United States as the obligee. (*Defs' Exhibits* [Doc. 32], Ex. B.)

Otay rented equipment for the Project from Ramona under an open account rental agreement (the "Rental Agreement"). (*Defs.' Sep. State.* at No. 10.) The Rental Agreement included "a monthly service charge on all unpaid balances of 1-1/2% per month", and required payment of the prevailing party's attorney's fees and costs in any proceeding to enforce the agreement. (*Compl.* [Doc. 1], Ex. 1 at p.2, ¶¶ 6, 15.) Although Ramona owned some of the equipment rented to Otay, certain equipment Ramona rented from third-party suppliers and then re-rented to Otay at a margin. (*Defs.' Sep. State.* at No. 23.) Otay was aware of the arrangement. (*Id.* at No. 23-25.)

On or about June 6, 2008, Calendaria terminated its subcontract with Otay due to alleged mismanagement of the work and failure to pay suppliers. (*Oppo.* at 2.) Thereafter, Ramona notified Candelaria that Otay failed to make payments due under the Rental Agreement. (*Id.* at 3.) Then on or about July 25, 2008, Ramona submitted a notice of its claim on the payment bond. (*Id.* at 3-4.)

On September 15, 2008, Ramona initiated the instant action. The first cause of action is brought under the Miller Act, 40 U.S.C. §§ 3131, *et seq.*, and alleges Defendants Candelaria and CCIC are liable for the unpaid balance due under the

Rental Agreement.[1] In the pending motion, Defendants seek partial summary judgment with respect to certain portions of that claim. Ramona opposes the motion.

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1030 (9th Cir. 2001). Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact." Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing

---

[1] Defendants are only challenging Ramona's Miller Act claim. Accordingly, the remaining causes of action are not relevant to the motion.

1  Richards v. Combined Ins. Co., 55 F.3d 247, 251 (7th Cir. 1995)).  If the moving party
2  fails to discharge this initial burden, summary judgment must be denied and the court
3  need not consider the nonmoving party's evidence.  Adickes v. S.H. Kress & Co., 398
4  U.S. 144, 159-60 (1970).

5       If the moving party meets this initial burden, the nonmoving party cannot defeat
6  summary judgment merely by demonstrating "that there is some metaphysical doubt as
7  to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
8  574, 586 (1986); Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir.
9  1995) (citing Anderson, 477 U.S. at 252) ("The mere existence of a scintilla of evidence
10 in support of the nonmoving party's position is not sufficient.").  Rather, the nonmoving
11 party must "go beyond the pleadings and by her own affidavits, or by 'the depositions,
12 answers to interrogatories, and admissions on file,' designate 'specific facts showing that
13 there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P.
14 56(e)).

15      When making this determination, the court must view all inferences drawn from
16 the underlying facts in the light most favorable to the nonmoving party.  See
17 Matsushita, 475 U.S. at 587.  "Credibility determinations, the weighing of evidence, and
18 the drawing of legitimate inferences from the facts are jury functions, not those of a
19 judge, [when] he [or she] is ruling on a motion for summary judgment." Anderson, 477
20 U.S. at 255.

21      Rule 56(d) provides for partial summary judgment.  See Fed. R. Civ. P. 56(d)
22 ("[T]he court...shall if practicable ascertain what material facts exist without substantial
23 controversy and what material facts are actually and in good faith controverted.").
24 Under Rule 56(d), the court may grant summary judgment on less than the non-moving
25 party's whole claim.  Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co., Inc.,
26 313 F.3d 385, 391 (7th Cir. 2002) (Posner, J.).  Partial summary judgment is a
27 mechanism through which the Court deems certain issues established before trial.  Lies
28 v. Farrell Lines, Inc., 641 F.2d 765, 769 n.3 (9th Cir. 1981) (quoting 6 Moore's Federal

Practice ¶ 56.20 (3.-2) (2d ed. 1976)). "The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit." Id.

## III. DISCUSSION

Defendants move for partial summary judgement with respect to the following portions of Ramona's Miller Act claim: (1) rental expenses for equipment Ramona did not own; (2) attorney's fees and litigation costs; and (3) pre-judgment interest. The Court will address each issue separately.

### A. Re-Rent Expenses

Ramona seeks in excess of $235,000 in unpaid equipment rental expenses. Defendants contend that Ramona is not entitled to expenses for equipment it rented from a third-party supplier and then re-rented to Otay.[2] According to Defendants, under the Miller Act, the plaintiff must have "furnished or supplied" materials to the project; because Ramona did not own the equipment it re-rented to Otay, Ramona did not truly "furnish or supply" the equipment. The Court is not persuaded by this argument.

The Miller Act provides as follows:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within ninety days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the

---

[2] Defendants contend that 40% to 50% of the outstanding balance on Ramona's invoices relate to re-rented equipment. (*Defs.' Sep. State.* at No. 18.) Ramona contends this calculation fails to take into account elements of rental costs, such as state sales tax, government imposed fees, and damage waiver fees, which reduce the percentage of the invoices related to re-rented equipment. (*Oppo. SSF* [Doc. 45-1] at No. 18.)

> time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

40 U.S.C. § 3133 (b)(1). A person having a direct contractual relationship with a subcontractor may bring an action on the payment bond upon giving written notice to the contractor within ninety days from the date on which the person "furnished or supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(b)(2). Unpaid equipment rentals are recoverable under the Miller Act. See <u>U.S. v. Algernon Blair, Inc.</u>, 479 F.2d 638, 640 (4th Cir. 1973).

"The Miller Act is 'highly remedial (and) entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public project." <u>F.D. Rich Co. v. U.S. ex rel. Industrial Lumber Company</u>, 417 U.S. 116 (1974). The purpose of the Act is "to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material." <u>U.S. for Benefit and on Behalf of Sherman v. Carter</u>, 353 U.S. 210, 217 (1957).

Here, there is no dispute that Ramona had a direct contractual relationship with Otay, a subcontractor on the Project, and that Ramona submitted a written notice of its claim for payment to Candelaria within ninety days of last providing equipment for the Project. (*Oppo.* at 3; *Oppo. SSF* at Ex. N.) Defendants argue, however, that Ramona cannot recover for equipment re-rented to Otay because Ramona could not have "furnished" or "supplied" the re-rented equipment. In other words, Defendants appear to believe that Ramona could only "furnish or supply" equipment that it owned.

The statute does not define "furnish or supply." The words, therefore, "have no special meaning or connotation," and must be considered "as ordinarily used." <u>Woods Construction Co., Inc. v. Pool Construction Co.</u>, 348 F.2d 687 (10th Cir. 1965).

"Furnish" is defined as "to provide what is needed" (Merriam-Webster Online, http://www.merriam-webster.com/dictionary/furnish (last visited Aug. 3, 2010), and "supply" means "to make available for use" (*Id.*,

1  http://www.merriam-webster.com/dictionary/supply (last visited Aug. 3, 2010)). Neither
2  of these definitions imply ownership of the thing being furnished or supplied.

3  Defendants, nevertheless, argue that Western Pacific L-C Corp. v. Tidewater
4  Contractors, Inc., 2008 WL 906285 (E.D. Cal. 2008) supports their position. In
5  Western Pacific, the general contractor rented lodging and office facilities from Craig
6  Brown. The facilities, however, were owned by Brown's mother. Brown later sued the
7  general contract and bond surety under the Miller Act for unpaid rental expenses. In
8  response, the defendants argued that Brown lacked standing to sue because he did not
9  own the facilities. Although the court agreed that Brown lacked standing, the court
10 based its decision on Brown's failure to provide evidence that he had *any rights* in the
11 property:

> Brown's testimony does not indicate that he had acquired *any rights* in Brown's Camp from his mother. [Citation omitted.] . . . Since Craig Brown has not presented evidence showing he had *any right* in Brown's Camp, he has not shown that he "furnished" materials within the meaning of the Miller Act.

Id. at *2.

16 Based on the court's reasoning, Western Pacific stands for the proposition that
17 a Miller Act plaintiff must have some right in the thing being furnished or supplied to
18 the subcontractor. As such, the decision simply confirms that someone cannot receive
19 compensation for supplying or furnishing equipment that they otherwise have no right
20 to use or possess. And unlike Western Pacific, here, there appears to be no dispute that
21 Ramona leased the equipment from Clairemont, assuming a right in the equipment, and
22 then re-rented it to Otay.

23 Defendants also rely on the Tenth Circuit decision in Woods Construction Co.,
24 Inc. 348 F.2d 687. Woods does not support Defendants for two reasons. First, unlike
25 this case, the Miller Act plaintiff in Woods did not supply or furnish any material to a
26 subcontractor. Rather, the plaintiff simply allowed the defendant access to a rock
27 quarry to independently mine, remove and crush rock for use in the project. And
28 because plaintiff had leased the quarry from a third-party, the Tenth Circuit found

plaintiff to be a subleasor of real property, not a supplier or furnisher of material. Id. at 689. Second, and perhaps more importantly, the Tenth Circuit explicitly recognized that the Miller Act does not require ownership of the material supplied or furnished:

> We do agree with appellee [i.e., plaintiff] to extent that there may be circumstances under which someone other than the owner could be deemed, under the Act, as furnisher or supplier but no such circumstances are present in this case.

Id. at 689. For these reasons, Woods does not assist Defendants, and the Court rejects Defendants' contention that Ramona may not seek to recover for equipment re-rented to Otay.

### B.    Attorney's Fees

Defendants next move for partial summary judgement with respect to the portion of Ramona's claim related to attorney's fees and litigation costs. Defendants argue that such fees are not recoverable under the Miller Act absent an enforceable contract between Ramona and Defendants providing for the award of fees. In opposition, Ramona claims its Rental Agreement with Otay, which provides for recovery of fees and costs, is enforceable against Defendants.[3] The Court agrees with Ramona.

Federal law governs the award of attorney's fees in Miller Act litigation. F.D. Rich, 417 U.S. at 127. Under federal law, "attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." Id. at 126. The Miller Act itself does not provide for an award of attorney's fees to a successful plaintiff. F.D. Rich, 417 U.S. at 126. Thus, Ramona's request for attorney's fees depends on whether it's attorney-fee provision in the Rental Agreement is enforceable against Defendants. North Star Terminal & Stevedore Co. ex rel. v. Nugget Const. Inc., 2005 WL 487313 *2 (9th Cir. 2005); U.S. for Use and Benefit of Reed v. Callahan, 884 F.2d

---

[3] Defendants do not dispute that the Rental Agreement provides for attorney's fees and court costs. (*See Compl.*, Ex. 1 at p.2, ¶ 15.)

1180, 1185 (9th Cir. 1989); Cont'l Cas. Co. v. United States ex rel. Conroe Creosoting Co., 308 F.2d 846, 849 (5th Cir. 1962).

Several circuit courts, including the Ninth Circuit, have held that attorney's fees are recoverable against the general contractor and surety if the contract between the subcontractor and supplier provides for such fees. See Travelers Indemnity Co. v. U.S. ex rel. Western Steel Co., 362 F.2d 896, 899 (9th Cir. 1966) (finding that under federal law, attorney's fees agreed to in a contract between the supplier and subcontractor are "part of the compensation 'justly due' [to] the subcontractor or material supplier under the Miller Act."); United States ex re. Carter Equip. Co. v. H.R. Morgan, Inc., 554 F.2d 164, 166 (5th Cir. 1977) (held surety and general contractor liable for a fee-shifting agreement between a supplier and subcontractor, despite there being no mention of fee-shifting in any agreement signed by the surety or general contractor); U.S. ex rel. Maddux Supply Co. v. St. Paul Fire & Marine Insurance Co., 86 F.3d 332, 336 (4th Cir. 1996) (enforcing attorney's-fee agreement between a supplier and subcontractor because it was consistent with the principal, "that contractors and their sureties are obligated to pay amounts owed by their subcontractor to suppliers.") Defendants argue, however, that these cases should not be followed because they predate the Supreme Court's decision in F.D. Rich. (*Reply* at 10.)

In F.D. Rich, the Supreme Court addressed whether the Miller Act requires "an award of attorneys' fees where the 'public policy' of the State in which suit was brought allows for the award of fees in similar contexts." Id., 417 U.S. at 126. Because the act "provides a federal cause of action, and the scope of the remedy as well the substance of the rights created thereby is a matter of federal not state law[,]" the Court held an award of attorney's-fees does not turn on the State's public policy. Id. at 127. F.D. Rich, however, did not address whether under federal law, an attorney-fee provision in a contract between the supplier and subcontractor may be enforced against the general contractor. But several post-F.D. Rich cases considering the issue have enforced such provisions against the general contractor and surety. See U.S. for Use and Ben. of

Carter Equipment Co., Inc. v. H.R. Morgan, Inc., 554 F.2d 164, 166 (5th Cir. 1977) (holding that under federal law, attorney-fee provision in contract between supplier and subcontractor was enforceable against general contractor); U.S. f/u b/o Southeastern Municipal Supply Co. v. Nat'l Union Fire Ins. Co., 876 F.2d 92, 93 (11th Cir. 1989) (same). In light of this authority, this Court remains bound by the Ninth Circuit's decision in Travelers Indemnity, which allows Ramona to enforce the Rental Agreement's attorney-fee provision against Defendants.

Defendants also attempt to rely on the Eleventh Circuit decision in U.S. ex rel. Krupp Steel Products, Inc. v. Aetna Ins. Co., 831 F.2d 978 (11th Cir. 1987), for the proposition that attorney's fees are not recoverable absent a direct contractual agreement between the parties. (*Mot.* at 13.) However, the Eleventh Circuit later explicitly repudiated the suggestion "that a contractual provision between a supplier and a subcontractor for the recovery of attorney's fees is not enforceable under the Miller Act against the general contractor or its surety." See U.S. for Use and Benefit of Krupp Steel Products, Inc. v. Aetna Ins. Co., 923 F.2d 1521, 1527 (11th 1991), citing Nat'l Union Fire Ins. Co., 876 F.2d at 93. Accordingly, far from assisting Defendants, Eleventh Circuit law supports Ramona.[4]

For all of these reasons, Defendants' motion for partial summary judgment of Ramona's attorney-fee claim is denied.

### C. Pre-Judgment Interest

Defendants lastly move for summary judgment with respect to the portion of Ramona's claim related to pre-judgment interest. (*Mot.* at 14.) In opposition, Ramona

---

[4] Defendants also rely on U.S. ex rel. L.K.L. Associates v. Crockett & Wells Const., Inc., 730 F.Supp. 1066, 1067-68 (D.Utah 1990), in which the district court held that the supplier was not entitled to attorney's fees since the contract between the general contractor and subcontractor did not contain a fee provision on the supplier's behalf. Although the case supports Defendants, it is contrary to the vast majority of circuit cases, including the Ninth Circuit decision in Travelers Indemnity 362 F.2d 896.

1  argues it is entitled to the monthly service charge of 1-1/2% per month on all unpaid
2  balances, provided for in paragraph six of the Terms and Conditions of the Rental
3  Agreement. (*Oppo.* at 14; *Compl.* Ex. 1 at p.2, ¶6.)  In reply, Defendants clarify that
4  they are not challenging the charges due under the Rental Agreement, only any claim
5  for prejudgment interest.  (*See Reply*, at 12 ("A contract provision for interest and
6  prejudgment interest are two different things. With respect to the contract interest rate,
7  questions of fact prevent it from being presented to the court through a summary
8  judgment motion.").)

9  Based on the parties' arguments, the question before the Court is whether
10  Ramona is entitled to non-contractual, prejudgment interest.  Because Ramona has not
11  argued that they are entitled to such interest, the Court will grant Defendants' motion
12  for partial summary judgment to the extent the Complaint seeks prejudgment interest
13  under the Miller Act.

15  **IV.  CONCLUSION & ORDER**
16  For the reasons stated above, the Court **DENIES** Defendants' partial summary-
17  judgement motion with respect to rental expenses for equipment Ramona did not own
18  and attorney's fees and litigation costs, and **GRANTS** partial summary-judgement with
19  respect to pre-judgment interest sought under the Miller Act. (Doc. 31.)

21  **IT IS SO ORDERED.**

23  DATED:  September 3, 2010

25  Hon. Thomas J. Whelan
    United States District Judge